**13 CV 2013**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
MARISSA WILLIAMS
Plaintiff

-against-                                                    COMPLAINT
                                                             PLAINTIFFS DEMAND
                                                             TRIAL BY JURY

FREDRICK SAVORY, individually and as caseworker;
JOHN MATTINGLY. as Commissioner
JESSICA JEAN HU, individually and as Chief of Staff
KATRINA JORDAN, individually and as caseworker;
KENNETH SOKOL, , individually and as
Special Assistant Corporation Counsel
HEATHER AWER, individually and as supervisor
LATOYA STEPHENS, individually and as
Special Assistant Corporation Counsel
LIZ LAUROS individually and as Chief of Staff
RAQUEL ELLIS, individually and as caseworker
RONALD RICHTER as Commissioner
YESENIA DELVALLE, individually and as supervisor
ZEENA ALLY, individually and as supervisor
CITY OF NEW YORK
NEW YORK POLICE DEPARTMENT
                                          Defendants
----------------------------------x



RECEIVED MAR 25 2013 PRO SE OFFICE

Plaintiff appearing Pro se hereby alleges against the Defendants as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil rights action, pursuant to 42 U.S.C § 1983. Defendants in this action are depriving the Plaintiff of her rights under the United States Constitution and laws, and the New York State Constitution and laws, by. inter alia, violating the right to be free of unlawful searches and seizures, the right to be free of cruel and unusual punishment, the right to substantive and procedural due process of the law, and the right to equal protection of the laws.

2. Defendant Child Welfare Authorities have repeatedly removed the Plaintiffs children from her with no court order or cause, enlisted NYPD to gain unwarranted entry to the Plaintiffs home, subjected the Plaintiff to unlawful arrest and detention, compelled the Plaintiff to submit to searches of her person and home, compelled a court to separate child from mother and sibling, interrogated the Plaintiffs minor children without the Plaintiff, a guardian, or legal representative present, and inspected her children, all in violation of her fundamental rights.

## II. JURISDICTION

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C § 1983, and by 28U.S.C. § 1331. This provides jurisdiction over all cases brought pursuant to the Constitution and Laws of the United States.

## III. PARTIES

4. Plaintiff and her children resided in the City of New York, Bronx County.
5. Plaintiff is the mother of children Izora Williams, and Yasmine Johnson.
6. Plaintiff has lived together with the children since they were born.
7. Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.
8. Defendant City's Administration for Children's Services (" ACS") is authorized by New York State law to investigate complaints of child abuse and neglect, and to offer rehabilitation and preventive services to both children and parents.
9. Defendant John Mattingly was the Commissioner of the Administration for Children's Services (" ACS") of the City of New York in 2009, and is sued in his individual and official capacities. Ronald Richter is the current Commissioner if ACS and is sued in his individual and official capacities.
10. As Commissioner of ACS, one is responsible for making and/or approving policies for ACS, including policies regarding the investigation of alleged child abuse or maltreatment, the removal and detention from their families, and the training and supervision of employees in ACS. As Commissioner of ACS, one is responsible for ACS compliance with the Constitution, statues, regulations, and common law of the United States and the State of New York.
11. Upon information and belief, Defendant Jessica Jean Hu was the Chief of Staff employed by ACS in 2009.

    Liz Lauros is the current Chief of Staff of ACS
12. Upon information and belief: Defendant Fredrick Savory is a caseworker employed by ACS
13. Upon information and belief: Defendant Katrina Jordan is a caseworker employed by ACS.
14. Upon information and belief: Defendant Zeena Ally is a supervisor employed by ACS.
15. Upon information and belief: Defendant Yesenia Delvalle is a supervisor employed by ACS.
16. Upon information and belief Defendant Latoya Stephens is Special Assistant Corporation Counsel for the City of New York. and is sued in her individual in official capacities.

17. Upon information and belief Defendant Kenneth Sokol is Special Assistant Corporation Counsel for the City of New York. and is sued in his individual in official capacities.

18. Upon information and belief, Racquel Ellis is a caseworker employed by ACS.

19. Upon information and belief Heather Awer is a caseworker employed by ACS.

20. The New York Police Department is the Law enforcement agency for the City of New York

### IV. Child Welfare Systemic Framework

18. New York State statutes and regulations provide a detailed blueprint for processing complaints of alleged child abuse, neglect, and maltreatment.

19. All complaints in the State of New York are received by a toll-free hotline, operated by the New York State Department of Social Services' State Central Register of Child Abuse and Maltreatment ("SCR"), located in Albany. A caseworker obtains background information about the family and a detailed description of the complaint.

20. At any point during its investigation, ACS may file a petition in the New York City Family Court charging a parent or person legally responsible for the child with child neglect or abuse as defined by the New York Family Court Act Article 10. The person charged with child abuse or neglect is called the "respondent".

21. Where the "respondent" is the child's parent, the other parent must be served with notification of pendency of the child protective proceeding advising said other parent of his or her right to appear and participate to the extent that the proceedings affect the temporary custody of the child. The non respondent parent is not mandated to appear or participate.

22. ACS trains employees that during the pendency of an abuse or neglect case against a respondent, ACS has jurisdiction over the child.

23. ACS trains employees that during the pendency of an abuse or neglect case, caseworkers may and should conduct regular searches (at least monthly) of the respondent's home. The search normally includes an inspection of all rooms, including the bedrooms, an examination of the inside of the refrigerator and the kitchen cupboards, and an inspection and interview (if

the children are old enough) of the children. In addition. ACS trains its employees that they must inspect the child a second time each month, either inside or outside the home.

24. ACS trains employees that the respondent parent has no right to refuse to allow the investigators to search their home.

25. ACS trains employees that caseworkers may and should threaten to bring police to force entrance into the home and should threaten to remove the child even if no danger to the child exists.

26. ACS trains employees that during the pendency of an abuse or neglect case against a respondent, caseworkers may and should require the respondent to attend and participate in services such as parenting classes and counseling even if no cause exists.

27. ACS trains employees that the respondent has no right to refuse to attend and participate in such services.

28. ACS trains employees that caseworkers may and should threaten to take away the child or charge the respondent with child neglect to coerce the respondent parent into attending and participating in such services.

29. ACS trains employees that during the pendency of an abuse or neglect case against respondents, caseworkers may and should contact the respondent at any location at which she may be found, such as her employment or her home, and should identify themselves as ACS caseworkers.

30. ACS does not train employees to protect the privacy of the respondent parent.

### V. FACTS

31. Plaintiff Marissa Williams has two children. Izora Williams and Yasmine Johnson. Izora was 9, and Yasmine was 6, when the following events began.

32. On October 15,2009, the Plaintiff and the children were residing together, when, according to ACS records, a person that was not a mandated reporter called the SCR. ACS records reveal that this person was a disgruntled girlfriend of the Plaintiff's ex-beau, Percy Robinson, the non respondent father of Izora Williams.

33. The same day, as Marissa Williams returned home from walking one of her dogs, she was approached by Defendant ACS caseworker Katrina Jordan.

34. The Plaintiff agreed to allow the caseworker into her home to interview her and her children.

35. On October 22, 2009 Defendant Katrina Jordan made an unannounced visit to the Plaintiffs home.

36. The Defendant asked if the Plaintiff would be willing to attend a Child Safety Conference.

37. The Plaintiff declined such meeting.

38. While exiting, Defendant Katrina Jordan reminded the Plaintiff of the date, time, and location, of the Child Safety Conference stating "in case you change your mind".

39. During research into the matter of the Child Safety Conference, the Plaintiff found that the conference was in fact voluntary.

40. On October 27, 2009 at 4pm, the Plaintiff was home with her child Yasmine Johnson, when Defendant caseworker Katrina Jordan and two police officers knocked on the door. The Plaintiff immediately opened the door.

41. The Plaintiff was advised that since she did not attend the voluntary conference earlier that day, the children were in "imminent danger" and an "emergency removal" without a court order had to be performed.

42. Given the time of day, and the lack of immediate, physical danger to the life or health of the children, there was time to get a court order.

43. Plaintiff Marissa Williams was told to appear in Bronx Family Court the following day.
Nine days after this "emergency removal" (less the emergency), the children were returned to the Plaintiff.

44. On November 19, 2009, non respondent father Percy Robinson, and the Plaintiff had an altercation where NYPD had to be called and a police report was filed against him.

45. On November 20, 2009 a disgruntled Percy Robinson, contacted non respondent father Gregory Johnson. They joined forces, and petitioned the court for custody of each of their children that same day. This fact proves that neither petition was filed in good faith.

46. On December 17, 2009, Plaintiff Marissa Williams was awakened by a police officer entering her bedroom.

47. Plaintiff Marissa Williams was informed that Defendant Katrina Jordan had allegedly been attempting to do a home visit, when she witnessed the children in the home through a window but saw no adult. She called the police and had officers pry open the Plaintiff's front door to gain entry and assess the children.

48. Once again, the Defendant supervisor Zeena Ally ordered another "emergency removal" without a court order. Again, there was no emergency for the mother and children were in the home and the house was not on fire.

49. ACS did not amend the initial Article 10 petition to reflect the incident with the police illegally entering the home of the Plaintiff.

50. Police are called to respond to emergencies. There was no emergency. Children in a home alone, is not an emergency in itself. There was no warrant or probable cause for the police to forcefully enter the Plaintiffs' home.

51. The police officers were not present in court.

52. The police officers were not identified.

53. The police officers did not give a verbal or written statement to the court.

54. The police officers did not make any arrests, or issue any summonses because there was no crime or misconduct.

55. The following day in court, Plaintiff Marissa Williams was ordered by the Judge to be tested for drugs. The results were negative.

56. From October 4, 2010 to January 28, 2013, ACS attorney's Latoya Stephens and Kenneth Sokol recommended that the children remain separated from each other and their mother on behalf of Defendant ACS caseworker Fredrick Savory and Defendant Yesenia Delvalle, although the services that ACS required the Plaintiff to complete had been successfully completed, there was no "imminent risk" in returning the children to their mother, and there was no "imminent danger to life or health" present when the children were removed either time.

57. The Bronx Family Court, Defendant ACS caseworkers Katrina Jordan, Fredrick Savory, and supervisor Yesenia Delvalle, have acknowledged the completion of "services" that the Plaintiff has engaged in as part of the identified "Service Plan" to promote reunification which included the generic counseling and parenting classes.

58. On November 17, 2010, the Plaintiff requested that her Public Defender be relieved as her counsel. The request was granted on November 23, 2010.

59. On December 3, 2010 the Plaintiff received her case file from the attorney. Included in the case file was a record of the case notes entered by various Defendant caseworkers and supervisors.

60. The case notes included false details, missing details, and entries up to 60 days after events took place.

61. The case notes also included information about the non respondent father Gregory Johnson, which includes numerous felony convictions, drug abuse, and domestic violence against the Plaintiff.

62. The Defendants Latoya Stephens, Kenneth Sokol, Fredrick Savory, Katrina Jordan, Yesenia Delvalle, and Zeena Ally still favored the continued placement of the Plaintiff's daughter Yasmine Johnson, with Gregory Johnson.

63. Defendants Latoya Stephens, Kenneth Sokol, Fredrick Savory, Katrina Jordan, Yesenia Delvalle, and Zeena Ally still favored the continued separation of the siblings which is in contrast to the NYS directives regarding placement of siblings.

64. Defendants have provided false information with regards to the role of ACS.

65. Defendants have threatened the Plaintiff with police intervention if their requests were not met.

66. Defendants interrogated the Plaintiff's children without adequate legal and protective representation present.

67. From ACS interference in 2009 until the present (approx. four years), the siblings have been separated with no provisions for reunification, and for no reason.

68. In 2012, the Court granted custody of one of the children, Izora Williams, to the Plaintiff. There were no provisions for the siblings to be reunited.

69. Both children were removed from the mother's care, yet only one child has been returned to the mother.

70. There has not been any evidence presented to, or documented by the court of any abuse caused by the Plaintiff that would be contrary to the other child's health, safety, or welfare.

71. There has not been any hospital, or doctor records, expert testimony, or photographic evidence, presented to, or documented by the court that allege or support any claims of abuse or mistreatment of the children from the mother.

72. Prior to March 18, 2013 the day when a call was allegedly made to the SCR about the Plaintiff's minor child, Izora Williams, and only after the minor child was interrogated by ACS and NYPD, and forced to sign legal documents without legal representation or similar protection present:
There had not been any testimony or allegations from the child that allege or support any claims of abuse or mistreatment of the child from the mother. Presently there has not been any testimony or allegations the Plaintiff's other minor child, Yasmine Johnson, that allege or support any claims of abuse or mistreatment of the child from the mother.

73. Prior to March 18, 2013 the day when a call was allegedly made to the SCR about the Plaintiff's minor child, Izora Williams, and only after the minor child was interrogated by ACS and NYPD, and forced to sign legal documents without legal representation or similar protection present:
There had not been any evidence presented to, or documented by the court of any arrests or summons related to the child and/or the mother. Presently there has not been any arrests or summons related to the Plaintiff's other minor child, Yasmine Johnson.

74. Presently, there has not been any evidence presented to, or documented by the court of any arrests, summons, or reprimand by the NYPD or any other arresting authority, of the mother due to non compliance with a Court order.

75. Presently, there has been no evidence presented to, or documented by the court of a Missing Person report being filed related to the children and the mother.

76. The Court ordered the mother engage in specific services. The services have been successfully completed, evaluated, and documented by Court Appointed officials. The goal of these services is completion for reunification of the family.

77. There are no provisions for reunification of this family. Plaintiff's minor child, Yasmine Johnson, is still separated from her mother and sibling.

78. The children have expressed their desire to be reunited with her mother and their siblings through their Law Guardian.

79. The children have not been called to testify.

80. On March 18, 2013 a report was allegedly called into to the SCR regarding the Plaintiff's child Izora Williams. This just happened to be five days after a Notice of Claim related to this lawsuit was filed against ACS. ACS caseworker Racquel Ellis entered the home of the Plaintiff without a without permission, warrant, or court order.

81. On March 19, 2013, ACS caseworker Heather Awer ordered the Plaintiff to bring her child to a police station. The Plaintiff complied. The minor child was interviewed by a badgeless NYPD officer identified only as "Rivera" without the Plaintiff, a guardian, or attorney present. The Plaintiff requested an attorney for her minor child. The request was denied by the ACS caseworkers and NYPD officers. The minor child was then coerced into signing legal documents without the Plaintiff, a guardian, or an attorney present. NYPD then subjected the Plaintiff to arrest and detention, and ACS once again removed the child from the Plaintiff's care without a court order, without an emergency, and without reasonable efforts to prevent removal being offered by ACS.

82 As of the date of this complaint, the ACS Commissioner continues to detain said minor child against her will, without a Court Order signed and dated prior to removal, and without provisions for reunification or visitation with the Plaintiff. There has been no information provided about where the child has been placed, and there has been no contact between the child and the Plaintiff.

83. The Plaintiff alleges a conspiracy of behalf of ACS and the City of New York to undermine the merits of this lawsuit by fabricating and subsequently pursuing a false abuse report.

## VI. FIRST CAUSE OF ACTION

84. The Plaintiff alleges and incorporates by reference paragraphs 1-83

85. Upon information and belief: Defendants have a policy of performing removals of children from their homes and calling them "emergency removals" in the absence of Court orders or "'imminent risk to life or health" in direct contrast to what the statues regarding this type of removal require.

86. Acting pursuant to said policy, Defendants conducted several unconstitutional removals of Plaintiff's children.

87. As a result of the Defendant's actions, the Plaintiff suffered, and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression

## VII. SECOND CAUSE OF ACTION

88. The Plaintiff alleges and incorporates by reference paragraphs 1-87

89. Upon information and belief Defendants have a policy of enlisting the Police Department to forcefully gain entry to the home of families that they are investigating.

90. Acting pursuant to said policy Defendants performed several unconstitutional, warrantless, forceful entries to the Plaintiff's home.

91. As a result of the Defendant's actions, the Plaintiff suffered, and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## VIII. THIRD CAUSE OF ACTION

92. The Plaintiff alleges and incorporates by reference paragraphs 1-92

93. Upon information and belief, the Defendants have a policy of removing and detaining children from their parents without probable cause.

94. Acting pursuant to said policy, Defendants have removed and detained the Plaintiff's children from the Plaintiff without probable cause.

95. As a result of the Defendants' actions, the Plaintiff has suffered, and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## IX. FOURTH CAUSE OF ACTION

96. The Plaintiff alleges and incorporates paragraphs 1- 95

97. By forcing the Plaintiff to allow the interrogation of her minor children without adequate legal representation and protection, and threatening removal of the Plaintiffs' children if this was not allowed, Defendant's unlawfully interfered with Plaintiff's custody of her minor children.

98. As a result of the Defendants' actions, the Plaintiff has suffered, and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## X. FIFTH CAUSE OF ACTION

99. The Plaintiff alleges and incorporates by reference paragraphs 1-98

100. By removing and detaining the Plaintiffs' children without a court order, Defendants unlawfully imprisoned he Plaintiffs' children.

101  As a result of the Defendant actions, the Plaintiff has suffered and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression.

### XI. SIXTH CAUSE OF ACTION

102.  The Plaintiff alleges and incorporates by reference paragraph 1-101

103  All of the Defendants had a duty to act with reasonable care toward Plaintiff, and with the highest degree of care towards the children.

104  The Defendants' lack of ethics and integrity, repeated removals, arrest, detention, forceful entry, and interrogation without adequate representation of minor children, constituted a gross breach of said duty and a gross deviation from professional standards.

105  As a result of the Defendants' actions, the Plaintiff has suffered and continues to suffer extreme humiliation, pain and suffering, terror, mental anguish, and depression.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered:

1. Granting declaratory relief necessary and appropriate to remedy the Defendants violations of the Plaintiffs' rights under the Fourth, Sixth, Eighth, Thirteen, and Fourteenth Amendments to the United States Constitution; and

2. Awarding the Plaintiff compensatory and punitive damages in the sum of Forty-Five Million dollars ($45,000,000.00) and

3. Awarding the Plaintiff interest from October 27, 2009 and

4. Granting such other and further relief as this Court may deem just and proper.

Dated: Bronx, NY
March 25, 2013

*Marissa Williams*
Marissa Williams, Pro Se
1758 Arnow Ave, Apt 6
Bronx, NY 10469
646.223.0510